## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WEBER FOOD TECHNOLOGY SE & CO. KG, TEXTOR MASCHINENBAU GMBH, & WEBER, INC., | § § § § | |
| Plaintiffs, | § § | Case No. _____ |
| v. | § § § | JURY TRIAL DEMANDED |
| PROVISUR TECHNOLOGIES, INC., | § § | |
| Defendant. | § § | |

## PLAINTIFFS' COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Weber Food Technology SE & Co. KG, Textor Maschinenbau GmbH, and Weber, Inc. (collectively, "Weber" or "Plaintiffs") file this Complaint for patent infringement against Provisur Technologies, Inc. ("Provisur" or "Defendant"). Plaintiffs allege infringement of United States Patent Numbers 10,737,403 ("'403 Patent"); 12,162,177 ("'177 Patent"); and 12,246,467 ("'467 Patent") (collectively, the "Asserted Patents").

## NATURE OF SUIT & BACKGROUND

1.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.     For decades, Weber has invested considerable time and resources in developing products and consumer relationships in the food-slicing industry. Many of Weber's innovations are embodied in patents around the world. This hard work and dedication by Weber's employees has helped catapult Weber to the top of the industry and its name has become synonymous with quality and craftmanship with its customers.

3.     Weber brings this action to enforce the exclusive rights provided by the Asserted Patents and to recover damages appropriate to compensate for Provisur's unauthorized and

infringing use of the claimed inventions.

## THE PARTIES

4.      Weber Food Technology SE & Co. KG is a European corporation duly organized and existing under the laws of Germany with a principal place of business at Guenther-Weber-Straße 3, 35236 Breidenbach, Germany.

5.      Textor Maschinenbau GmbH ("Textor") is a corporation duly organized and existing under the laws of Germany with a principal place of business at Gewerbestraße 2, 87787 Wolfertschwenden, Germany.  Textor Maschinenbau GmbH is a subsidiary of Weber.

6.      Weber, Inc. is a Missouri corporation with its principal place of business at 10701 N. Ambassador Dr., Kansas City, Missouri, 64153. Weber, Inc. is a wholly owned subsidiary of Weber Food Technology SE & Co. KG and is solely responsible for selling and distributing Weber's products to customers in the United States. As the sole entity responsible for selling and distributing those products in the U.S., it has the exclusive right to sell the products and is being harmed by Provisur's infringement.

7.      Defendant Provisur is a Delaware corporation. Provisur may be served with process in this District through its registered agent, Cogency Global Inc., at 850 New Burton Road, Suite 201, Dover, Delaware 19904. Defendant Provisur has its principal place of business at 222 North LaSalle Street, Suite 720, Chicago, Illinois, 60601.

8.      Defendant Provisur also fully owns and operates subsidiaries, including Formax, Inc. ("Formax"), and Hoegger AG ("Hoegger"), which are included within reference to "Provisur".

9.      Provisur makes, uses, offers for sale, sells, and/or imports into the United States products that practice the claimed inventions of the Asserted Patents, including at least the Free

Movement System ("FMS")[1] and CashinSX Commercial Slicer ("CashinSX"),[2] among other products (collectively, the "Accused Products").

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338, as those claims arise under the patent laws of the United States (35 U.S.C. §§ 1 *et seq*.).

11.     Provisur is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Delaware Long Arm Statute.

12.     Personal jurisdiction exists over Provisur at least for the reason that Provisur is incorporated under the laws of the State of Delaware and therefore has availed itself of the privileges of conducting business in the State of Delaware. As such, this judicial district is where the Provisur resides and where Provisur is considered "at home" for purposes of establishing personal jurisdiction and venue.

13.     Personal jurisdiction also exists over Provisur because, on information and belief, Provisur, directly or through subsidiaries, agents, representatives, or intermediaries makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products and/or services including the Accused Products within this District that infringe one or more claims of the Asserted Patents. Further, on information and belief, Provisur has placed or contributed to placing infringing products and/or services sold and used in this District.

14.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b)-(c)

---

[1] https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products.

[2] https://www.provisur.com/en/equipment/slicing/cashinsx/.

and/or 1400(b) because Provisur is incorporated in Delaware and therefore resides in the District of Delaware.

## FACTUAL ALLEGATIONS

### A. Background

15.    Weber is a globally renowned innovator within the meat and cheese processing industry. For more than 40 years, Weber has crafted and sold machinery to improve the efficiency of the preparation and distribution of deli meats, cheeses, sausages, and various food products. Weber's success has attracted customers from across the world and Weber now serves a large group of customers for industrial food slicers.

16.    Recognizing Weber's innovations within the food-slicing industry, the United States Patent and Trademark Office ("USPTO") and other countries' intellectual property offices granted hundreds of patents to Weber's technologies.

17.    On information and belief, Provisur spent years replicating Weber's innovative food processing machines and techniques. For years, Provisur used Weber's patented technologies to redesign and modify the products they sell.

18.    Provisur has knowledge of the Asserted Patents at least from the filing date of this Complaint. Further, on information and belief, Provisur has, for years, monitored Weber's food processing business and products. For example, Provisur has cited various Weber patents, including the German parent of the '403 patent, during prosecution of its own patents, since at least as early as 2021.[3] On information and belief, Provisur has extensive knowledge about the success of Weber's technologies, including the inventions claimed in the Asserted Patents.

---

[3] *See, e.g.*, German Patent Nos. DE1020211508; DE102021105093A1; DE102021105104A1; DE102021105101A1; DE102021105105A1.

**B. The '403 Patent**

19.    On August 11, 2020, the United States Patent and Trademark Office duly issued U.S. Patent 10,737,403, entitled "AUTONOMOUSLY ELECTROMAGNETIC TRANSPORT CARRIER OF FOOD PORTIONS". A true and correct copy of the '403 Patent is attached hereto as **Exhibit A**.

20.    The inventors of the '403 Patent were employees of Weber, and assigned all of their right, title, and interest in and to the '403 Patent to Weber, which remains the owner of the '403 Patent today.

21.    The '403 Patent claims priority to German Patent Application Nos. 102012105848.8, filed on April 25, 2014, and 102014106400.3, filed on May 7, 2014.

22.    The '403 Patent is valid and enforceable.

23.    The '403 Patent describes an apparatus for moving portions of sliced food products using individually movable transporters. *See, e.g.*, Exhibit A at 1:15-18; 2:49-53. The invention described in the '403 Patent shifts away from the prior art's rigid conveyor belt systems and toward individual transportation, providing more flexible product movement and improved cleaning access. *See, e.g.*, *id.* at 2:54-61; 3:7-12.

24.    To the extent applicable, Plaintiffs have at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '403 Patent. Weber has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for the infringement of the '403 Patent.

**C. The '177 Patent**

25.    On December 10, 2024, the United States Patent and Trademark Office duly issued U.S. Patent 12,162,177, entitled "CUTTING FOOD PRODUCTS". A true and correct copy of the

'177 Patent is attached hereto as **Exhibit B**.

26.    The inventor of the '177 Patent was Jörg Schmeiser, who assigned all of his rights, title, and interest in and to the '177 Patent to Textor Maschinenbau GmbH. Textor Maschinenbau GmbH is a subsidiary of Weber and is the owner and assignee of the '177 Patent with the right to enforce the '177 Patent.

27.    The '177 Patent claims priority to German Patent Application No. 102016101753.1, filed on February 1, 2016.

28.    The '177 Patent is valid and enforceable.

29.    The '177 Patent describes a high-performance slicer that includes a compact sensor for detecting the outer contours of food products, rather than relying on large and external product scanner machines. *See, e.g.*, Exhibit B at 2:20-25. The inclusion of the sensor within the slicing apparatus described by the '177 Patent provides advantages over the prior art, such as lower costs and less space lost to the external scanner machine. *See, e.g.*, *id.* at 2:26-33.

30.    To the extent applicable, Plaintiffs have at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '177 Patent. Weber has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for the infringement of the '177 Patent.

**D. The '467 Patent**

31.    On March 11, 2025, the United States Patent and Trademark Office duly issued U.S. Patent 12,246,467, entitled "SLICING APPARATUS". A true and correct copy of the '467 Patent is attached hereto as **Exhibit C**.

32.    The inventors of the '467 Patent were Sigfrid Bauer and Axel Zimansky, who were employees of Weber and assigned all of their right, title, and interest in and to the '467 Patent to

Weber, which remains the owner of the '467 Patent today.

33.     The '467 Patent claims priority to European Patent Application No. EP 20188434.3, filed on July 29, 2020.

34.     The '467 Patent is valid and enforceable.

35.     The '467 Patent describes a slicing apparatus with a loading apparatus that allows food products to be conveniently loaded and then lifted for transfer onto the conveyor. *See, e.g.*, Exhibit C at 2:35-40. Such a loading apparatus makes it easier for human machine operators to continuously load food products, thus minimizing disruptions to the production line. *See, e.g.*, *id.* at 1:59-62; 2:50-53.

36.     To the extent applicable, Plaintiffs have at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '467 Patent. Weber has satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for the infringement of the '467 Patent.

## COUNT I: INFRINGEMENT OF THE '403 PATENT

37.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

38.     Plaintiffs have not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '403 Patent.

39.     In violation of 35 U.S.C. § 271, on information and belief, Defendant has and continues to directly infringe the '403 Patent either literally or under the doctrine of equivalents at least by making, using, selling, offering for sale, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '403 Patent.

40.     At least as of October 17, 2025, Defendant posted new videos of its FMS and

further advertised that "existing machines already in use can also be retrofitted with FMS."[4] By manufacturing and offering the FMS for sale in the United States, including in this District, Defendant engages in infringing acts within the meaning of 35 U.S.C. § 271(a).

41.     For example, Defendant has and continues to directly infringe at least Claim 1 of the '403 Patent, literally and/or pursuant to the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States the Formax Free Movement System ("FMS").[5]

42.     The FMS is an apparatus for moving portions of food product, which each comprise at least one slice cut off from a food product[6]:



---

[4] https://www.youtube.com/watch?v=Z28a9bZHQP0 (SX380 and FMS (Cheese); https://www.youtube.com/watch?v=lFP9ECPhgbE (FMS Line Video 2024); https://www.youtube.com/watch?v=OShykd96ZmU (FMS Italian Meats); https://www.youtube.com/watch?v=2ornoFtg3Z8 (FMS Bacon); https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products.

[5] The images used herein come from publicly available materials, including marketing materials, and may not fully represent the nuances of the architectures of the Accused Products. Images used in this Complaint and labeling thereon is meant to be demonstrative, not limiting.

[6] https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products.

43.     The FMS comprises a plurality of individually movable transport movers each for at least one portion:[7]



Explaining the advantages for the end user, Gerd Stratenwerth notes, "Thanks to the fast, free-floating movers, the portions can be processed with a high output for this typical application segment. Even multi-type portions can be put together flexibly and in the smallest possible space. Because the XPlanar movers can move to any point on the work surface and rotate freely, the whole process of picking up cut products for transport is more straightforward than ever.

44.     The FMS also includes a track system for the plurality of individually movable transport movers in which the plurality of individually movable transport movers are movable in a direction of transport along at least one track. For example, and as shown below, the transport movers move along tracks programmed by the software in the control device as shown below:[8]

---

[7]https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products (image annotated); https://www.beckhoff.com/en-us/company/news/floating-product-transport-cuts-footprint-in-half-and-speeds-up-handling-and-cleaning.html (image annotated).

[8] https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-





The unique levitation effect ensures wear-free and noiseless product movement in up to six degrees of freedom – including 360° rotation. Traveling at up to 2 m/s, products are transported on different movers simultaneously over arbitrarily designed tracks. If the load capacity of a single mover is not sufficient, several movers act in combination and position goods in the μm range.

system-for-sliced-products (image annotated); https://www.beckhoff.com/en-us/products/motion/xplanar-planar-motor-system/ (image annotated); https://www.youtube.com/watch?v=ShrN-GFYqnU (showing direction of transport).

45.    The FMS includes a control device for controlling the movements of the plurality of individually movable transport movers in the track system:[9]





46.    The FMS includes a transfer device of the track system, the transfer device

---

[9] https://www.beckhoff.com/en-us/products/motion/xplanar-planar-motor-system/; https://www.beckhoff.com/en-us/company/news/floating-product-transport-cuts-footprint-in-half-and-speeds-up-handling-and-cleaning.html (image annotated).

including a conveyor belt, the conveyor belt moving portions onto the plurality of individually movable transport movers, the transfer device comprising a plurality of conveyor belts oriented parallel to each other:[10]



47.     On information and belief, the FMS has a plurality of individually movable transport movers each comprising at least one rotor cooperating with the track system and at least one carrier for at least one portion attached to the rotor by a holder, the at least one carrier comprising a plurality of rods spaced from each other and oriented parallel to each other, the plurality of rods defining a plurality of spaces, wherein each of the plurality of spaces are large enough to receive one of the plurality of conveyor belts[11]:

---

[10] https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products (image annotated).

[11] https://www.foodengineeringmag.com/articles/102129-compact-and-hygienic-handling-system-for-sliced-products (image annotated); https://download.beckhoff.com/download/document/motion/xplanar_ba_en.pdf; https://www.beckhoff.com/en-us/products/motion/xplanar-planar-motor-system/ (image annotated); https://www.linkedin.com/posts/provisur-technologies-inc_fms-iffa-2022-activity (image annotated).



The free-floating movers can move over arbitrarily arranged tiles without jerking or touching. The movers are kept apart by electro-magnetic forces. The movers can be positioned precisely and highly dynamically via traveling magnetic fields.



13

The XPlanar mover is the magnetically floating, freely movable, and wireless component of the XPlanar system. The special arrangement of the integrated permanent magnets enables the fascinating levitation effect and the free movement of loads by means of the movers. The XPlanar mover is passive and has no moving parts or connections. Its smooth surface with no sharp edges makes it easy to clean. Workpiece carriers can be fastened and aligned on the mover via threaded and preformed holes.



48.     The FMS also includes a drive for each of the plurality of individually movable transport movers formed by the at least one rotor and by the track system which together form an electromagnetic drive for each one of the plurality of individually movable transport movers:[12]

The XPlanar mover is the magnetically floating, freely movable, and wireless component of the XPlanar system. Due to an innovative arrangement, the integrated permanent magnets enable the powerful lifting and movement of loads. The XPlanar tiles required for the operation generate electromagnetic fields that move the XPlanar movers dynamically and precisely through the production process.

The XPlanar mover is passive and has no moving parts or connections. Its smooth, edge-free surfaces make it easy to clean and optionally resistant to a large number of chemical cleaning agents. Due to its non-contact floating, the XPlanar mover does not carry over any dirt and causes no wear and thus no abrasion or noise.

---

[12] *Id.*; https://www.beckhoff.com/en-us/products/motion/xplanar-planar-motor-system/apmxxxx-xplanar-mover/

14

The free-floating movers can move over arbitrarily arranged tiles without jerking or touching. The movers are kept apart by electromagnetic forces. The movers can be positioned precisely and highly dynamically via traveling magnetic fields.



49.    Defendant has actual knowledge of the '403 Patent, and its infringement thereof described above, at least as of the date of filing of this Complaint.

50.    In violation of 35 U.S.C. § 271(b), Defendant has and continues to infringe one or more of the '403 Patent's claims, including at least Claim 1, indirectly by knowingly and intentionally inducing others, such as Provisur's customers and end-users to directly infringe either literally or under the doctrine of equivalents. For example, Provisur's customers and/or end-users directly infringe via their use of the Accused Products and/or their manufacture, use, sales, and/or

offers for sale in the United States and/or importation into the United States of other products that incorporate the Accused Products in manners that infringe the '403 Patent, including at least Claim 1.

51.    On information and belief, Provisur furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products and markets and advertises such products on its website, in videos, at conferences, and elsewhere to induce third parties, including Provisur's customers and/or end-users to use the Accused Products, and/or to make, use, sell, and/or offer for sale in the United States and/or import into the United States other products incorporating the Accused Products in manners that would infringe one or more of the claims of the '403 Patent, including at least Claim 1. Defendant encourages its retail partners to import, offer for sale, and/or sell Accused Products to customers in the United States. On information and belief, Provisur provides marketing materials and technical documentation to these retailers to facilitate their sales efforts, knowing that the resulting transactions involve infringing use of the patented technology by customers in the United States, including in this District.

52.    Defendant's acts of infringement have caused damages to Weber, and Weber is entitled to recover from Defendant the damages it has sustained as a result of Defendant's wrongful acts in an amount to be determined at trial.

53.    Plaintiffs are entitled to, and now seek to, recover damages in an amount not less than the maximum amount permitted by law caused by Defendant's acts of infringement, including for damages arising before the filing of the Complaint and an ongoing royalty, and, in any case, no less than a reasonable royalty, pursuant to 35 U.S.C. § 284, together with interest and costs as fixed by the Court.

16

54. Plaintiffs incorporate by reference the allegations of Paragraph 18 and therefore allege that Defendant's infringement of the '403 Patent is willful, entitling Weber to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

55. Further, Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '403 Patent. Unless enjoined, Defendant will continue its infringing acts, thereby causing Plaintiffs continuing and irreparable injury for which there is no adequate remedy at law. Moreover, the balance of hardships between the parties favors Plaintiffs, and the public interest would not be disserved should a permanent injunction be ordered.

56. Accordingly, Plaintiffs are entitled to a permanent injunction pursuant to 35 U.S.C. § 283 to prevent Defendant from making, using, selling, offering to sell, or importing into the United States any products or services that infringe the '403 Patent.

## COUNT II: INFRINGEMENT OF THE '177 PATENT

57. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

58. Plaintiffs have not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '177 Patent.

59. In violation of 35 U.S.C. § 271, Defendant has and continues to directly infringe the '177 Patent either literally or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '177 Patent.

60. By facilitating these sales and deliveries in the United States, including in this District, Defendant engages in infringing acts within the meaning of 35 U.S.C. § 271(a).

17

61.     For example, Defendant has and continues to directly infringe at least Claim 1 of the '177 Patent, literally and/or pursuant to the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States the CashinSX, among other products.

62.     CashinSX is an apparatus for slicing food products:[13]



**OVERVIEW**

The CashinSX® combines the best of the Cashin and SX platforms to provide maximum slicing performance for retail and food service applications. Next-generation features allow for superior weight control, accurate slice counts, and consistent slice thickness – improving yields, throughput, and quality for bacon processors.

---

[13] https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf; https://www.provisur.com/en/equipment/slicing/cashinsx/.

63.    The CashinSX includes a product inlet region:[14]





64.    The CashinSX also includes a working region:[15]

---

[14] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (image annotated); https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf (image annotated).

[15] https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf (image annotated); https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.





65.    The CashinSX includes a cutting region:[16]

---

[16] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (image annotated).



66.    The CashinSX includes a cutting plane at an end of the cutting region:[17]



67.    The CashinSX includes a cutting blade that moves in the cutting plane:[18]

---

[17] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (image annotated).

[18] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (image annotated).





68.    The CashinSX includes a front product abutment upstream of the cutting plane and configured for abutment with a front end of a product to be sliced:[19]

---

[19] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (images annotated).





69.    The CashinSX includes a transport region between the product inlet region and the cutting region, the transport region having a product feed that supplies the product to be sliced to the cutting region on at least one track:[20]

---

[20] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (images annotated).





70.    The CashinSX includes a contactless contour scanner housed in a self-contained sensor housing and configured to detect at least a portion of an outer contour of the product to be sliced, the contactless contour scanner defining a scanning region for scanning the outer contour of the product to be sliced, the scanning region located in the working region and external to the

24

self-contained sensor housing:[21]





On-Board 3D Scanner

- Integrated product scanners provide a detailed visualization of each bacon belly
- True 3D product imaging for in-depth inspection of every crack, crevice, peak, and valley that may affect slicing accuracy and consistency
- Proactive weight control results in higher accept rates with accurate portion control, consistent slice thickness, exact slice count, and high production rates

---

[21] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (image annotated);
https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf.

71.    On information and belief, the CashinSX includes a laser source for transmitting scanning radiation into the scanning region for scanning the product to be sliced:[22]



72.    On information and belief, the CashinSX includes a camera for receiving radiations from the scanning region:[23]



73.    The CashinSX includes a contactless contour scanner located upstream or

---

downstream of and proximate the front product abutment:[24]





74.    On information and belief, the CashinSX includes a control device configured to

receive, from the contactless contour scanner, contour data indicative of the outer contour of the

product to be sliced and to control operation of the product feed based on the contour data to obtain

---

[24] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s (images annotated).

product slices of constant weight:[25]

> **On-Board 3D Scanners**
> Integrated scanners at the top and bottom create a true 3D product image that the slicer uses to proactively calculate how to slice each draft to get accurate portion weight, exact slice count, and consistent slice thickness within each draft.

75.    Defendant has actual knowledge of the '177 Patent, and its infringement thereof described above, at least as of the date of filing of this Complaint. Further, on information and belief, Defendant had knowledge of the '177 Patent as early as February 20, 2023, when Defendant cited the '177 Patent's Application Publication, No. 2019/0152084, during prosecution of its Patent Application No. 18/045,904.

76.    In violation of 35 U.S.C. § 271(b), Defendant has and continues to infringe one or more of the '177 Patent's claims, including at least Claim 1, indirectly by knowingly and intentionally inducing others, such as Provisur's customers and end-users to directly infringe either literally or under the doctrine of equivalents. For example, Provisur's customers and/or end-users directly infringe via their use of the Accused Products and/or their manufacture, use, sales, and/or offers for sale in the United States and/or importation into the United States of other products that incorporate the Accused Products in manners that infringe the '177 Patent, including at least Claim 1.

77.    On information and belief, Provisur furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products and markets and advertises such products on its website, in videos, at conferences, and elsewhere to induce

---

[25] https://www.provisur.com/webfoo/wp-content/uploads/provisur-cashinsx-slicer-sell-sheet.pdf.

third parties, including Provisur's customers and/or end-users to use the Accused Products, and/or to make, use, sell, and/or offer for sale in the United States and/or import into the United States other products incorporating the Accused Products in manners that would infringe one or more of the claims of the '177 Patent, including at least Claim 1. Defendant encourages its retail partners to import, offer for sale, and/or sell Accused Products to customers in the United States. On information and belief, Provisur provides marketing materials and technical documentation to these retailers to facilitate their sales efforts, knowing that the resulting transactions involve infringing use of the patented technology by customers in the United States, including in this District.

78.     Defendant's acts of infringement have caused damages to Weber, and Weber is entitled to recover from Defendant the damages it has sustained as a result of Defendant's wrongful acts in an amount to be determined at trial.

79.     Plaintiffs are entitled to, and now seek to, recover damages in an amount not less than the maximum amount permitted by law caused by Defendant's acts of infringement, including for damages arising before the filing of the Complaint and an ongoing royalty, and, in any case, no less than a reasonable royalty, pursuant to 35 U.S.C. § 284, together with interest and costs as fixed by the Court.

80.     Plaintiffs incorporate by reference the allegations above, specifically Paragraphs 18 and 73, and therefore allege that Defendant's infringement of the '177 Patent is willful, entitling Weber to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

81.     Further, Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '177 Patent. Unless enjoined, Defendant will continue

its infringing acts, thereby causing Plaintiffs continuing and irreparable injury for which there is no adequate remedy at law. Moreover, the balance of hardships between the parties favors Plaintiffs, and the public interest would not be disserved should a permanent injunction be ordered.

82.    Accordingly, Plaintiffs are entitled to a permanent injunction pursuant to 35 U.S.C. § 283 to prevent Defendant from making, using, selling, offering to sell, or importing into the United States any products or services that infringe the '177 Patent.

## COUNT III: INFRINGEMENT OF THE '467 PATENT

83.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

84.    Plaintiffs have not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '467 Patent.

85.    In violation of 35 U.S.C. § 271, Defendant has and continues to directly infringe the '467 Patent either literally or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '467 Patent.

86.    By facilitating these sales and deliveries in the United States, including in this District, Defendant engages in infringing acts within the meaning of 35 U.S.C. § 271(a).

87.    For example, Defendant has and continues to directly infringe at least Claim 1 of the '467 Patent, literally and/or pursuant to the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States the CashinSX, among other products.

88.    The CashinSX is a slicing apparatus for slicing food products into slices, the slicing apparatus comprising a feeding unit configured to feed products along a feeding direction into a

cutting region in which a blade for slicing the products into slices is arranged:[26]





[26] https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf;
https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.

89.    The CashinSX includes a trimming cutter to cut off a part of the products during the feeding into the cutting region:[27]



90.    The CashinSX includes a trimming cutter arranged to cut the products along the feeding direction for cutting off the part of the products:[28]



---

[27] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.

[28] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.

91.    On information and belief, the CashinSX forms a selection gap for sorting out the part of the product that has been cut off from the product in the feeding unit:[29]





92.    On information and belief, the CashinSX includes a selection gap arranged

---

[29] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.

subsequently, downstream to the trimming cutter in the feeding direction, such that the part of the product that has been cut off by the trimming cutter falls through the selection gap:[30]





93.    Finally, on information and belief, the CashinSX includes a scanning device that scans the products that are fed over the selection gap into the cutting region, wherein the scanning

---

[30] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s.

device is arranged to scan the products through the selection gap:[31]

> **On-Board 3D Scanners**
> Integrated scanners at the top and bottom create a true 3D product image that the slicer uses to proactively calculate how to slice each draft to get accurate portion weight, exact slice count, and consistent slice thickness within each draft.

94.     Defendant has actual knowledge of the '467 Patent, and its infringement thereof described above, at least as of the date of filing of this Complaint.

95.     In violation of 35 U.S.C. § 271(b), Defendant has and continues to infringe one or more of the '467 Patent's claims, including at least Claim 1, indirectly by knowingly and intentionally inducing others, such as Provisur's customers and end-users to directly infringe either literally or under the doctrine of equivalents. For example, Provisur's customers and/or end-users directly infringe via their use of the Accused Products and/or their manufacture, use, sales, and/or offers for sale in the United States and/or importation into the United States of other products that incorporate the Accused Products in manners that infringe the '467 Patent, including at least Claim 1.

96.     On information and belief, Provisur furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products and markets and advertises such products on its website, in videos, at conferences, and elsewhere to induce third parties, including Provisur's customers and/or end-users to use the Accused Products, and/or to make, use, sell, and/or offer for sale in the United States and/or import into the United States

---

[31] https://www.youtube.com/watch?v=Lq3OxJQ3YLc&t=4s; https://www.provisur.com/webfoo/wp-content/uploads/CashinSX_Brochure.pdf (image annotated).

other products incorporating the Accused Products in manners that would infringe one or more of the claims of the '467 Patent, including at least Claim 1. Defendant encourages its retail partners to import, offer for sale, and/or sell Accused Products to customers in the United States. On information and belief, Provisur provides marketing materials and technical documentation to these retailers to facilitate their sales efforts, knowing that the resulting transactions involve infringing use of the patented technology by customers in the United States, including in this District.

97.    Defendant's acts of infringement have caused damages to Weber, and Weber is entitled to recover from Defendant the damages it has sustained as a result of Defendant's wrongful acts in an amount to be determined at trial.

98.    Plaintiffs are entitled to, and now seek to, recover damages in an amount not less than the maximum amount permitted by law caused by Defendant's acts of infringement, including for damages arising before the filing of the Complaint and an ongoing royalty, and, in any case, no less than a reasonable royalty, pursuant to 35 U.S.C. § 284, together with interest and costs as fixed by the Court.

99.    Plaintiffs incorporate by reference the allegations of Paragraph 18 and therefore allege that Defendant's infringement of the '467 Patent is willful, entitling Weber to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

100.    Further, Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendant's infringement of the '467 Patent. Unless enjoined, Defendant will continue its infringing acts, thereby causing Plaintiffs continuing and irreparable injury for which there is no adequate remedy at law. Moreover, the balance of hardships between the parties favors

Plaintiffs, and the public interest would not be disserved should a permanent injunction be ordered.

101.    Accordingly, Plaintiffs are entitled to a permanent injunction pursuant to 35 U.S.C. § 283 to prevent Defendant from making, using, selling, offering to sell, or importing into the United States any products or services that infringe the '467 Patent.

## PRAYER FOR RELIEF

102.    WHEREFORE, Weber prays for judgment and requests that the Court find in its favor and against Defendant. Plaintiffs respectfully request that the Court enter judgment against Defendant as necessary to provide Weber with the following relief:

a.  A judgment that Defendant has infringed and/or is infringing one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, and directly or indirectly, as alleged above;

b.  A permanent injunction enjoining Defendant from committing further acts of infringement;

c.  A judgment that Defendant's infringement of the claims of the Asserted Patents has been willful;

d.  An award for all damages and costs arising out of Defendant's infringement, to adequately compensate Weber for Defendant's infringement of the Asserted Patents, but in no event less than a reasonable royalty, including an accounting of damages up to any verdict as well as supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

e.  Pre-judgment and post-judgment interest, jointly and severally, in an amount according to proof;

f.  Treble damages based on Defendant's willful infringement;

g. An accounting of damages and any future compensation due to Weber for Defendant's infringement (past, present, or future) not specifically accounted for in a damages award (or other relief), and/or permanent injunctive relief;

h. A judgment that this case is exceptional and an award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

i. An award of costs of suit;

j. All further relief in law or in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Weber demands a trial by jury on all issues so triable.

Dated: October 31, 2025

OF COUNSEL:

Adam P. Seitz, *pro hac vice* to be filed
Carrie A. Bader, *pro hac vice* to be filed
ERISE IP, P.A.
7015 College Boulevard, Ste. 700
Overland Park, KS 66211
Telephone: (913) 777-5600
Fax: (913) 777-5601
Adam.seitz@eriseip.com
Carrie.bader@eriseip.com

Abran Kean, *pro hac vice* to be filed
Christina Canino, *pro hac vice* to be filed
ERISE IP, P.A.
717 17th Street
Suite 1400
Denver, CO 80202
Telephone: (720) 689-0679
Abran.kean@eriseip.com
Christina.canino@eriseip.com

  _/s/ Kenneth L. Dorsney_____
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiffs*

38